DYE, Respondent, v. THE CHICAGO & ALTON RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals. Argued, January 4; Opinion Filed January 12, 1909.

1. CARRIERS OF PASSENGERS: Instruction: General Proposition of Law: Harmless Error. In an action against a railroad company for damage incurred by plaintiff, a passenger, in being put off the train short of her destination by the negligence of the defendant, an instruction defining the duty of the defendant railroad company in general terms was cured by other instructions which correctly and definitely stated the law applicable to the case.

2. ———: Negligence: Warning to Passengers: Stopping Train Away from Station. The employees of a railroad company on starting from a station announced to the passengers that the next stop would be a certain station. The train stopped before reaching that station and the brakeman went through the car

Dye v. Railroad.

announcing the station. A passenger, whose destination was the station thus announced as the next stop, got off the train in mud and water and by reason of the exposure suffered sickness and physical injury. *Held*, in an action for the damage caused thereby, that the employees of the railroad company were negligent in failing to warn the passengers against alighting at the place mentioned.

3. ————: ————: **Element of Damage: Instruction.** In such action it was proper for the jury in arriving at the amount of plaintiff's damage to take into consideration the place where she got off the train, the condition of the weather and the sickness and suffering, if any, caused by alighting at that point.

4. ————: ————: ————: **Mental Suffering.** In such case the plaintiff was not entitled to recover as an element of damage for fright or mental anguish unless she suffered physical injury, but bodily suffering from cold or being wet, if any, was physical injury within the meaning of the instruction.

5. ————: ————: **Prima-Facie Case.** In such case the evidence is examined and held sufficient to make out a prima-facie case for plaintiff.

Appeal from Audrain Circuit Court.—*Hon. Jas. D., Barnett,* Judge.

Affirmed.

*Scarritt, Scarritt & Jones* and *John D. Orear* for appellant.

*P. H. Cullen* for respondent.

REYNOLDS, P. J.—On June 11, 1907, an excursion train was run on the Chicago & Alton Railroad between Louisiana and Mexico, Missouri. The train went east to Louisiana in the morning and returned on the evening of that day. The plaintiff, a young lady about twenty years old, with two other young ladies, and three young men of about the same age, went on this excursion from Rush Hill, returning to the latter place the night of that day. The station next east of Rush Hill is Laddonia. When Laddonia was reached on the return trip, it was raining slightly but a few minutes

after leaving Laddonia the train ran into a severe storm, accompanied by rain, hail, wind, thunder and lightning. As the train was leaving Laddonia the trainmen went through the coaches and announced "next station Rush Hill." Plaintiff testified that she heard the trainman announce, as he went through, "the next station is Rush Hill."

This train consisted of seven coaches. Rush Hill is about five miles west of Laddonia. After the train had gone several miles west from Laddonia and when it had reached the eastern end of Rush Hill switch or siding, which is about a half or three-quarters of a mile east of the depot at Rush Hill, the train was slowed down and stopped. Whereupon the plaintiff, together with the other two young ladies and the three young men in her party, went at once to the rear platform of the coach in which they were riding—it being the third coach from the end of the train, and alighted, stepping into the ditch at the side of the track, which was filled with water to a depth over plaintiff's shoe tops. They soon discovered they were not at the Rush Hill depot and at first started to walk east, supposing they had passed Rush Hill. The flagman was on the rear end of the rear coach and as that passed some of the party called out "is this Rush Hill?" He, finding that they were Rush Hill passengers, pulled the signal cord and stopped the train. The train had stopped at this switch one or two minutes, and the flagman testified that when he pulled the cord to stop, these people were about three car-lengths behind the train. The train stopped at his signal and the party walked down to it and got aboard. When the train first stopped and plaintiff and her party got off, the hail had ceased but it was still raining hard, so that plaintiff and her companions became thoroughly wet while they were out in the storm. The night was dark and that fact, coupled with the storm rendered it impossible for them, according to their testimony,

to see where the train was when it stopped but they supposed .it was at Rush Hill.

Plaintiff and her companions testified that as the train slowed down at this side track some one, whom they took to be a train employee, passed through their coach and called out the words, "Rush Hill"; that they took this for information that they had arrived at the depot and an invitation to alight, which they proceeded to do. They testified that this man who called out "Rush Hill" went on out of this coach and they did not see him again. There was evidence tending to show that it was a custom for the trainman, on leaving -one station to announce the name of the station at which the next stop would be made. The plaintiff and her witnesses admitted that no trainman was in or about the coach door, or in sight, when they alighted. Besides the engineer and fireman the train crew consist-· ed of a conductor, front brakeman and rear brakeman, or flagman. These trainmen testified positively that neither of them called out "Rush Hill," or invited any one in. any way to alight at the place in question. There is testimony to the effect that the duties of the flagman, or rear brakeman, required him to remain at or about the rear end of his train, and that he was there when he discovered these people on the track after the train started up and had passed ·them, and when he stopped the train for them. The conductor and head brakeman testified that they were up near the front end of the train when the storm broke upon them, and were busily engaged in putting down windows in the forward cars at the time the train stopped near the eastern end of the sidetrack. When the train stopped these two proceeded to the platform of one of the head coaches to ascertain what was the cause of the stop, but by the time they got to the platform the train had again start-ed and they saw or knew nothing of these people get-

135 App—17

ting off, and only heard of it when they went back through the train to find out the cause of the second stop in obedience to the signal of the trainman.

After plaintiff and her companions overtook and got on board the train it proceeded to Rush Hill, which place was reached at about ten o'clock at night and there plaintiff alighted and was met by her father and drove home with him, a distance of about a mile. The worst of the storm was over when Rush Hill was reached, although it was still raining.

The plaintiff claimed as a result of her exposure that her clothing had been damaged and rendered unfit for further use and that she suffered greatly and was thoroughly chilled and as a result became sick, contracting a severe cold; that she was greatly shocked by the treatment which she received and that when she entered the coach of defendant, after getting off on defendant's invitation, her clothing was wet, muddy and soiled and she was greatly humiliated by appearing in such condition before numerous passengers in the coach; that she had suffered great pain of body and anguish of mind and her nervous system had been permanently shocked and impaired, and she claimed judgment by way of damages for her injuries in the sum of $3,000.

The jury returned a verdict in her favor for $140, for which amount judgment was rendered against defendant and after an unsuccessful motion for a new trial defendant has appealed.

The court gave several instructions at the request of the plaintiff and defendant, and refused several asked by defendant, to which action exception was duly saved.

Error is assigned on the action of the court in giving three instructions which were asked by plaintiff.

The first instruction is to the effect that defendant owed to plaintiff, while a passenger on its train, the duty of managing and operating it with the highest degree of care that a prudent person in view of the facts

and circumstances at the time of the wrong complained of would have exercised, and that the defendant is liable to the plaintiff for any omission of such care, if such omission resulted in injury to the plaintiff while she was herself acting with ordinary care for her own safety. It is complained of this instruction that it is, in the language of the learned counsel for appellant, "a glittering generality with reference to the care required of a railroad company toward a passenger," and that "the instruction winds up by telling the jury that 'the defendant is liable to the plaintiff for any *omission* of such care, if such omission resulted in injury to plaintiff.'" If this had been the only instruction given in the case, it might be subject to this criticism. But all the instructions given are to be construed together, and the rule here generally announced in this particular instruction was clearly applied to this particular case by the other instructions given. The instruction itself is in entire harmony with well established principles. See for example Fillingham v. St. Louis Transit Co., 102 Mo. App. 573, where at page 582 the authorities are very fully collated.

The second instruction, in substance charged that if the jury believe that the act of defendant's servants, under the state of facts disclosed by the evidence—those facts being set out substantially as here above noticed—was negligent conduct, that plaintiff was entitled to recover. We see nothing in this instruction not warranted by the evidence and it is in line with the law as announced by our courts in many cases. While there was no negligence in stopping the train at the place where it was stopped, it was negligence on the part of defendant's servants who were in charge of the train, not to have warned the passengers against alighting at that place, after those passengers had been notified by the trainmen, immediately after leaving one station, that the next stop would be at the station of their destination, there being ample evidence to war-

rant the jury in finding that such notice was given, and there being evidence to show that when the train did stop at the east end of the siding, nearly a mile from Rush Hill, a trainman called out in the car in which plaintiff and her companions were sitting, "Rush Hill," there being no pretense that there was any warning given by any one connected with the running of the train that the place at which the train did stop was not Rush Hill.

The third instruction complained of is as to the amount of damages plaintiff is entitled to, if any. It tells the jury that in arriving at the amount they should take into consideration the place she got off of the train, the condition of the weather and the sickness and suffering, if any, that was caused by so alighting. We see no error in this to the prejudice of defendant.

Among the instructions asked by defendant was this: "The court instructs the jury that if they believe plaintiff suffered no physical injury or injuries, then you cannot allow her any damages for fright or mental anguish, if any, you may believe she suffered." The court refused to give this as asked, but gave it in the following form: "The court instructs the jury that if they believe that plaintiff suffered no physical injury or injuries, then you cannot allow her any damages for fright or mental anguish, if any, you may believe she suffered; but any bodily suffering from cold or from being wet, if any, would be a physical injury within the meaning of this instruction." Defendant duly excepted to the refusal to give the instruction as asked and to the giving of it as modified. We find no error in this instruction as given by the court.

There was a demurrer to the evidence at the close of plaintiff's testimony, as well as at the close of the case, and error is assigned to the action of the lower court in refusing to sustain it. Resting our conclusion in this case upon the statement of facts which we have given, and they are substantially set out as stated

by the learned counsel for appellant in their brief on file, we are of the opinion that there was no error in overruling these demurrers to the evidence. There was ample evidence to entitle the case to go to the jury.

Nor do we discover any reversible error in the admission or exclusion of testimony, on which error is also assigned.

The propositions of law advanced and ably discussed by the learned counsel for appellant are propositions that have been gone over time and again by the courts of this State and it would serve no useful purpose to take them up in detail. We are satisfied that no error was committed to the prejudice of the appellant, and the judgment of the lower court is accordingly affirmed. All concur.