THE STATE v. FENTON N. GOODSON, Appellant.

Division Two, June 11, 1923.

1. **ABORTION**: Information. The information set out in the opinion, charging defendant with having produced the miscarriage of a pregnant woman by use of instruments, is held to be good in both form and substance and sufficient to uphold a conviction of manslaughter.

2. **EVIDENCE**: Headless Body: Identification. The evidence offered by the State in this case was sufficiently. substantial to warrant a finding by the jury that the headless body of a colored woman found floating in a lake, and the severed head found in underbrush near the lake, originally constituted the body of the woman upon whom defendant was convicted of having committed an abortion.

3. ————: Cause of Death: Decapitation or Abortion. Where the headless body of a pregnant woman was found floating in a lake, and the evidence indicated that an abortion had been committed upon her, testimony of the State's witness that they could not say what caused her death, but that in their opinion it was caused either by her decapitation or by an abortion, is not sufficient to convict defendant of manslaughter. Even if it should appear that an abortion was produced, which is the crime charged, the burden still remains upon the State to prove that no abortion was neces-

299 Mo.—21.

sary to save her life or that of the unborn child, and to establish defendants' criminal agency therein.

4. ————: Circumstantial: Criminal Agency of Defendant: Conjecture. It is not enough that it is possible that defendant may be guilty of the criminal abortion charged against him in the information; a verdict of guilty cannot be made to rest upon mere speculation or conjecture, but the proof showing defendant's criminal agency in the offense must be substantial, and it must establish his guilt beyond a reasonable doubt. If his conviction must rest upon circumstantial evidence, the circumstances proven must be consistent with each other, consistent with the hypothesis that the accused is guilty, and inconsistent with the hypothesis that he is innocent and with every other rational hypothesis except that of his guilt.

5. ————: Abortion: Good Health of Deceased. Nor is it sufficient that the evidence show that defendant performed an operation upon a pregnant woman which produced an abortion; the State must also produce substantial testimony tending to show that the pregnant woman was in good health before the operation and that it was not necessary that an abortion be produced.

Appeal from Buchanan Circuit Court.—*Hon. W. H. Utz*, Judge.

REVERSED AND REMANDED.

*Mytton & Parkinson, W. B. Morris* and *Barney E. Reilly* for appellant.

(1) By Sec. 3239, R. S. 1919, under which the defendant was tried, the administration of drugs and the use of instruments to produce an abortion are distinct and separate offenses and both methods cannot be charged in one count. The offenses must be stated in separate counts, and if the use of an instrument for such purpose is alleged it is necessary to prove that the death of the woman was occasioned by the use of such instrument. Proof of another method used is not sufficient to sustain a conviction. There is no proof in the case at bar that the abortion was caused by the use of any instrument, as alleged in the information. State v. Stapp, 246 Mo. 338; State v. Sonner, 253 Mo. 440; State v. Reed, 154 Mo. 122.

(2)  Under Section 3239 it was necessary for the State to prove that the operation was not performed in the course of medical treatment as a necessary means of saving the life of the woman or that of the unborn child. If the evidence fails to show the condition of the woman immediately before the abortion, or shows that the woman was not in good health immediately before such abortion, the State has failed in its proof and the case should not be submitted to the jury. In the case at bar the evidence does not show the physical condition of the woman other than that the woman upon whom the abortion was alleged to have been committed stated ''she was not feeling very well'' at the time she went to see the defendant. The State having failed in its proof in this necessary allegation of the information, the case should not have been submitted to the jury. State v. DeGroat, 259 Mo. 364; State v. Sonner, 253 Mo. 440; State v. Hawkins, 210 S. W. 4.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondent.

(1)  The information is in form approved by this court and is sufficient. Sec. 3239, R. S. 1919; State v. Hawkins, 210 S. W. 6; State v. Keller, 287 Mo. 127; State v. Jones, 197 S. W. 158; State v. Dargatz, 244 Mo. 224.  (2)  A prima-facie case of non-necessity is made out by proof of the fact that the woman was in good health, or in her ordinary condition of health, immediately prior to the abortion, as was shown by the evidence in this case. State v. DeGroat, 259 Mo. 380; State v. Sonner, 253 Mo. 446; State v. Casto, 231 Mo. 408; State v. Dargatz, 244 Mo. 225; State v. Dinkelkamp, 207 S. W. 771.  (3)  The weight of the evidence is for the jury. This court will not reverse a judgment in a criminal case on the ground that the verdict is not supported by the evidence, unless there is a total failure of evidence or it is so weak that there is a necessary inference that the verdict is the result of passion, prejudice or partiality.

State v. Howell, 100 Mo. 659; State v. Yandell, 201 Mo. 662; State v. Long, 257 Mo. 208; State v. Arnett, 210 S. W. 83.

RAILEY, C.—On October 4, 1920, the Prosecuting Attorney of Buchanan County, Missouri, filed in the circuit court of said county, an information against defendant, in two counts. The first charged the defendant with murder in the first degree, in that on June 13, 1920, with a sharp instrument, etc., he murdered Bernetta Coleman. The second count of said information charged appellant with manslaughter, in having feloniously killed said Bernetta Coleman, by performing an abortion upon her on the date aforesaid.

On February 1st, an amended information in two counts was filed in this cause. The first count charged defendant with murder in the first degree as alleged in the original information. The second count of the amended information, on which the State elected to and did stand in the trial of the case, without caption and signature, reads as follows:

"Perry A. Brubaker, Prosecuting Attorney within and for Buchanan County, in the State of Missouri, upon information and belief, and upon his official oath, informs the Circuit Court of Buchanan County, that on or about the 13th day of June, 1920, at said county, Fenton N. Goodson in and upon one Bernetta Coleman, a pregnant woman, then and there wilfully, feloniously and unlawfull with force and arms did make an assault; and did then and there wilfully, feloniously and unlawfully use and employ in and upon the body and the womb of the said Bernetta Coleman a certain instrument and instruments, the nature and description of which is and are unknown to affiant, by then and there wilfully, feloniously and unlawfully inserting, thrusting and forcing said instrument and instruments into the vaginal passage and womb and private parts of the said Bernetta Coleman, said pregnant woman, with the intent, then and there to

promote and produce a miscarriage and abortion upon and to the person of her the said Bernetta Coleman, the same not being then and there necessary to preserve the life of the said pregnant woman, to-wit, the said Bernetta Coleman, and the same not being then and there necessary to preserve the life of an unborn child, and the said act not being then and there advised by a duly licensed physician to be necessary for that purpose, and the said act and acts were done by the said Fenton N. Goodson, who was then and there a duly licensed physician, with the intent to produce and promote a miscarriage and abortion, wilfully, feloniously and unlawfully in the manner aforesaid and by means and in consequence of which said use and employment in and upon the body and womb of the said Bernetta Coleman, as aforesaid, and with the felonious and unlawful intent then and there to promote and produce a miscarriage and abortion upon and to the person of the said Bernetta Coleman, he the said Fenton N. Goodson, being then and there a licensed physician and then and there not intending necessary medical and surgical treatment, and not being then and there engaged in any act necessary to preserve the life of said Bernetta Coleman, or that of an unborn child, did by the means aforesaid and in the manner aforesaid mortally wound, infect and disease the body and womb of the said Bernetta Coleman, in consequence of which she was made and became mortally sick and of which mortal sickness on or about the 13th day of June, 1920, at the County of Buchanan, in the State of Missouri, she, the said Bernetta Coleman, did die; and so the prosecuting attorney aforesaid, upon his oath aforesaid, doth say that the said Fenton N. Goodson, her, the said Bernetta Coleman at the county and State aforesaid, in the manner and by the means aforesaid, unlawfully, wilfully and feloniously did kill and murder, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State.''

Appellant waived a formal arraignment, and entered his plea of not guilty. He filed a motion to quash the

amended information, which was overruled. He thereupon filed a demurrer to the amended information, which was also overruled. On June 6, 1921, he was placed upon trial before a jury, and on the 8th of said month, the following verdict was returned:

"We, the jury in the above entitled cause, find the defendant guilty of manslaughter as charged in the second count of the information, and assess his punishment at four (4) years in penitentiary."

Defendant, in due time, filed motions for a new trial and in arrest of judgment. Both motions were overruled, judgment rendered, sentence pronounced, and defendant duly appealed the cause to this court.

The evidence on behalf of the State tends to show that appellant was a practicing physician in St. Joseph, Missouri; that Bernetta Coleman, a colored woman, twenty-six years of age, lived at Iowa City, Iowa; that prior to her marriage with Coleman she had been married to two other men, from whom she had separated; that on May 30, 1920, she came to St. Joseph, Missouri, to visit her mother, Lucy Johnson, and stayed there about two weeks; that she had a little bundle when she left her mother, and told the latter she was going to Dr. Goodson's; that she first said she was going to her grandmother's, and then told her mother she was going to Dr. Goodson's hospital, and was pregnant.

Her mother testified that she was pregnant; that a letter came to her daughter from Dr. Goodson, in which he said: "I would like to see you at your earliest convenience."

Mrs. Leona Allen, the aunt of Bernetta Coleman, testified that about the 9th of June she went with Bernetta to Dr. Goodson's hospital, and only stayed a few minutes; that Bernetta told witness she was pregnant; that Bernetta said she didn't feel very good; that Lucy Johnson went with her to see Dr. Goodson, after it was reported that Bernetta Coleman was gone, and after her body had been found; that Dr. Goodson said Bernetta had gone,

and her address was 2003 South Fourteenth Street, Salt Lake City. Mrs. Allen testified at the trial that Bernetta Coleman told her she was going to Dr. Goodson and have an operation performed, but in her written statement, offered in evidence at the trial, testified to directly the opposite state of facts.

Joseph Smith, defendant's office boy, testified that prior to June 11, 1920, a *strange lady* came to defendant's office, and he never saw her any more; that he put some rails in a double bed at defendant's place, *but they were not the rails produced at the trial;* that he never saw the rails before they were offered in evidence.

The evidence for the State further tends to show that F. E. Gordon, while fishing in Lake Contrary, in said county, about the middle of June, 1920, found the headless body of deceased, with iron rails wired to it, floating in said lake; that Dr. Wisser, the county coroner, was notified and examined the body of deceased; that his examination disclosed that the body of deceased was fastened to a couple of bed rails by wire; that the head was gone, and there was a nail in one bunch of the wire, which fastened her body to the rails; that in his opinion, the head had been removed in a scientific way; that the body above mentioned was that of a colored woman; that about one week after the body was buried, to-wit, on June 25th, he examined the body of deceased, removed her womb, and found that it was six or seven inches long, while a normal womb would be about three and one-half inches long; that the deceased had been pregnant, and in her womb there had been an opening of about two inches; that from what he found, he thought an abortion had been produced; that where an abortion is produced, and the womb does not contract, a continuous flow or hemorrhage will follow, resulting in death; that what he saw was sufficient to produce death; that in his opinion she was pregnant four or five months; that she came to her death by a hemorrhage from an abortion.

The State's evidence likewise tended to show that deceased was identified by her mother and aunt on ac-

count of a scar on her left hand, made in an automobile accident; that she was also identified by the dentist from Iowa who filled her teeth and recognized his work; that deceased's skull, with some hair, was found in October, 1920, in a little clump of underbrush near Lake Contrary.

Marion Richmond testified that he did not know defendant, but he saw a colored man about the middle of June get out of his car, look up and down the road, then take something under his arm and go into the timber near where the skull was found.

Detective White testified that he took the nail and piece of the wire with which deceased's body had been fastened, and went to defendant's back porch where he found a similar wire with one end fastened to a post, and the other end pulled loose; that the above nail fit in the place where the nail holding the wire had been pulled out. It further appears from the evidence that on June 14, 1920, a bundle of laundry, weighing fifty or sixty pounds, bearing defendant's mark, was taken by the driver to the Pearl Laundry, in South St. Joseph; that a part of this bundle consisted of quilts and sheets, which were soaked quite a bit with blood.

The only evidence offered in behalf of defendant was that tending to show his general reputation was good.

The instructions and rulings of the court will be considered, as far as necessary, in the opinion.

I. The second count of the information on which defendant was tried is heretofore set out and need not be referred to again. Its sufficiency was challenged by motion in arrest of judgment, but this question is not referred to in appellant's assignment of errors. We are of the opinion that said second count of the amended information is sufficient as to both form and substance. [Sec. 3239, R. S. 1919; State v. Keller, 287 Mo. l. c. 127; State v. Hawkins, 210 S. W. l. c. 6; State v. Jones, 197 S. W. l. c. 158; State v. Dargatz, 244 Mo. l. c. 224-5.]

Section 3239, supra, as applied to the facts of this case, reads substantially as follows:

State v. Goodson.

Any person who, with intent to produce a miscarriage or abortion, uses upon a woman any instrument or other method or device to produce a miscarriage or abortion (unless the same is necessary to preserve her life or that of an unborn child, or if such person is not a duly licensed physician, unless the said act has been advised by a duly licensed physician to be necessary for such a purpose), shall, in event of the death of said woman, or any quick child whereof she may be pregnant, being thereby occasioned, upon conviction, be adjudged guilty of manslaughter and punished accordingly.

*Information.*

II. We are of the opinion that there was sufficient substantial evidence offered by the State to warrant the jury in finding that the headless body of the colored woman found floating in Lake Contrary, and the severed head, found in the underbrush near the lake, originally constituted the head and body of Bernetta Coleman mentioned in evidence. The remaining part of the *corpus delicti,* relating to an alleged felonious killing, and the alleged criminal agency of defendant in connection therewith, will be separately considered.

*Identification of Deceased.*

III. Dr. Wisser, the coroner, testified, in substance, that he could not say what caused this woman's death, but in his opinion, her death was either caused by the decapitation or from an abortion. If it should be held that deceased lost her life by decapitation, and not by an abortion, it would necessitate a reversal and remanding of this cause under the pleadings. On the other hand, even if it should appear from the evidence that an abortion was produced, it would devolve upon the State to show, affirmatively, that no abortion was necessary to save her life or that of the unborn child. The burden of proof devolves upon respondent to establish appellant's guilt beyond a reasonable doubt. The defendant is presumed to be in-

*Cause of Death.*

nocent until the contrary legally appears, and no conviction based upon mere speculation or conjecture, as that shown in this case, should be permitted to stand. [State v. Singleton, 294 Mo. 346; State v. Bowman, 294 Mo. 245; Pate v. Dumbauld, 298 Mo. 435; Perkins v. Wilcox, 294 Mo. 700; Van Bibber v. Swift & Co., 228 S. W. (Mo.) l. c. 75; Cluett v. U. E. L. & P. Co., 220 S. W. (Mo.) l. c. 867; Grant v. K. C. So. Ry. Co., 190 S. W. (Mo.) l. c. 589-590; McGrath v. St. L. Transit Co., 197 Mo. l. c. 105-6; Warner v. Railway Co., 178 Mo. 125.]

IV. It was not only necessary for the State to show, beyond a reasonable doubt, that deceased died from an unlawful abortion, but it likewise devolved on it to show, beyond a reasonable doubt, that the death of deceased was produced through the criminal agency of defendant as alleged in the second count of information. It is true, such criminal agency may be established by satisfactory circumstantial evidence, but not by either conjecture or speculation as heretofore shown. The evidence is set out very fully in the preceding statement and, hence, it is not necessary to quote from same. It is possible, that defendant may have been guilty of the offense charged against him in the second count of information, but his conviction, if permitted to stand, ought to be based upon more substantial testimony than that contained in this record. [State v. Casey, 247 S. W. (Mo.) 114; State v. Singleton, 294 Mo. 346; State v. Bowman, 294 Mo. 245; State v. Remley, 237 S. W. (Mo.) 489; State v. Morney, 196 Mo. l. c. 49.]

In the last named case, at page 49, we said: "When a conviction for felony rests altogether upon circumstantial evidence, as in this case, 'the circumstances proved must be consistent with each other, consistent with the hypothesis that the accused is guilty and at the same time inconsistent with the hypothesis that he is innocent, and with every other rational hypothesis except that of guilt.' [12 Cyc. 488, and authorities cited.]"

*Criminal Agency of Defendant.*

The same principle of law is announced in the Singleton Case, supra, at pages 151-2.

V.   Aside from the foregoing, even if the evidence had disclosed that defendant performed an operation on deceased which produced an abortion, his conviction could not be permitted to stand in the absence of substantial testimony tending to show that deceased was in good health before the operation and that it was not necessary that an abortion should be produced.   [State v. Sonner, 253 Mo. 440, 161 S. W. 723; State v. Hawkins, 210 S. W. (Mo.) 4; State v. DeGroat, 259 Mo. 364.]   We are of the opinion, that there is no substantial, legal evidence in the cause, showing that Bernetta was in good health before her death, and that an operation was unnecessary to save her life or that of her unborn child.

*Good Health of Deceased.*

VI.   It would serve no good purpose to extend this argument further.   Although a great deal of hearsay evidence was admitted without objection, and legal conclusions testified to by some of the witnesses, we are of the opinion that there is no substantial evidence in the case, on which a jury was legally authorized to convict defendant of manslaughter in causing the death of Bernetta Coleman by the unlawful production of an abortion.

*Conclusion.*

In order that the State may be afforded an opportunity to produce additional testimony, if it has any, we will reverse and remand the cause to be proceeded with in conformity with the views heretofore expressed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court.   All of the judges concur.