ALICE E. ALLEN, Respondent, v. ROBERT J. DUNHAM and FORD F. HARVEY, Receivers of the METROPOLITAN STREET RAILWAY COMPANY, Appellants.

Kansas City Court of Appeals, March 1, 1915.

1. **NEGLIGENCE: Street Railways: Violent and Unexpected Stop.** Plaintiff's husband, eighty-two years of age, a passenger on a street car, arose, when the car stopped at his destination, and while proceeding in the aisle of the car to the rear door, the car started but was almost immediately brought to an unusually abrupt, violent and unexpected stop, which threw him to the floor causing injuries which resulted in his death. It was *held* that the demurrer to the evidence was properly overruled.

2. **————: Personal Representative.** If the husband's death resulted from the negligence of the defendants, the plaintiff, as his widow, was the proper party to sue for enforcement of the surviving cause of action, but if his death was not caused by such negligence, the surviving cause could be enforced only in an action prosecuted by her as her husband's personal representative.

188MA13

3. ———: ———: ———. Where two actions are inconsistent, not in the alleged causes, which were the same, but in the vital matters of the measure of recovery and of the proper party to prosecute the causes as plaintiffs, it is not error for the court to allow them to carry out a stipulation to try them in one action before one jury.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*John H. Lucas* and *Broaddus & Crow* for appellants.

(1) The plaintiff having alleged acts of negligence, the burden was clearly on her to sustain same by substantial evidence. Gibler v. Railroad, 148 Mo. App. 475; Bean v. Transit Co., 212 Mo. 331. (2) Before plaintiff can recover in this case she must show that defendants stopped its car in a violent, unusual and negligent manner thereby causing Mr. Allen to fall; and in her testimony the plaintiff shows that there was no unusual, unnecessary, violent or unexpected stop. If the movement of the car was usual, necessary and ordinary, certainly plaintiff could not recover, or if the starting of the car caused the injury a like result follows. Bartley v. Railroad, 148 Mo. 124; Patrums v. Railroad, 168 S. W. 622; Pryor v. Railroad, 85 App. 367. The circumstances of each case must be considered by the court in determining whether plaintiff can recover. Brady v. Railroad, 140 Mo. App. 425. (3) Instruction number one, second paragraph, expressly authorizes the jury to return a verdict for slight negligence and emphasizes the right of the jury so to do in the last sentence of instruction number one which was clearly erroneous there being no degrees of negligence in this State. This instruction for this reason was clearly erroneous and prejudicial to defendants. Young v. Railroad, 227 Mo. 307, 332; Magrane v. Railroad, 183 Mo. 119- 127.

*Park & Brown* for respondent.

(1) The petition alleges general negligence in the abrupt and violent stop of the car.  Macdonald v. Railroad, 219 Mo. 468, 474, 487; Maier v. Railroad, 176 Mo. App. 29, 34.    (2) Proof of the violent stop and simultaneous injury make a prima-facie case which defendant must explain.   Macdonald v. Railroad, 219 Mo. 487; Maier v. Railroad, 176 Mo. App. 35.    (3) The stop was unusual, as quick as could be made, and "afforded reasonable evidence that the accident arose from want of care."     Agnew v. Railroad, 165 S. W. 1110 (this court); Bell v. Railroad, 125 Mo. App. 660, 666; Och v. Railroad, 130 Mo. 27, 51; Dougherty v. Railroad, 81 Mo. 325, 329.

JOHNSON, J.—This is an action under section 5425, Revised Statutes 1909, and was begun in the circuit court of Jackson county, August 20, 1913, by the widow of Elijah R. Allen, deceased, to recover $10,000 for his death which she alleges was caused by the negligence of defendants in the operation of a street car on the Troost avenue line in Kansas City.   The petition alleges that Allen died June 30, 1913, from injuries received June 11, 1912, while a passenger on the street car and that "said car was negligently, unskillfully and in utter disregard of duty, run, conducted, managed and operated by the agents and servants of defendants in that said car was caused or permitted to come to an unusually abrupt, violent and unexpected stop" and that "the said husband of plaintiff was thrown violently to the floor of said car thereby breaking  .  .  . and dislocating his right hip and the joint thereof and otherwise fatally wounding him."

The answer is a general denial and plea of contributory negligence.   At the time of the death of Allen an action on the same cause, brought by him in the circuit court of Jackson county, was pending and after-

ward was revived in the name of plaintiff as the executrix of his last will. The parties to the two cases by their respective attorneys entered into and filed a stipulation in which they agreed "that said causes may be tried at the same time before the same judge and jury, that the testimony taken in either of said causes may be used upon the trial in the other of said causes, in other words, that all testimony taken in one case may be used with like effect in the other case, subject to all objections as to competency and relevancy and that said causes may be reset for Monday, November 17, 1913, and both causes tried at that time before the same judge and jury."

Pursuant to this stipulation the court, with the aid of a jury, proceeded to try both cases but at the beginning of the trial, counsel for defendants objected to the introduction of any evidence for the reason that the petitions were so repugnant as to be mutually destructive. An essential element of the cause alleged in the petition of the executrix was that the death of her husband was not caused by the injury, while the opposite fact was indispensable to a recovery in the second action prosecuted by her as the widow of the deceased, under section 5425, Revised Statutes 1909.

The objection was overruled and defendants then filed a motion, which also was overruled, that plaintiff be required to elect upon which cause she would proceed.

At the close of the evidence of plaintiff a motion to elect was presented again, after defendants demurrers to the evidence were overruled, and was sustained, whereupon counsel for plaintiff announced that they would proceed with the widow's case and then took an involuntary nonsuit in the case of the executrix, with leave to move to set the same aside. Defendants then moved that the jury be discharged on the ground that they had been prejudiced by evidence admitted in support of the abandoned action which was irrele-

vant to the issues in the widow's case and highly prejudicial to rights of defendants. This motion was overruled and the trial of the widow's case proceeded.

At the close of all the evidence defendants again requested the giving of a peremptory instruction but the request was refused and the cause submitted to the jury. A verdict for plaintiff in the sum of $3500 was returned and after their motion for a new trial was overruled defendants appealed.

The material facts relating to the injury and subsequent death of Allen are as follows: He was eighty years old, in good health, and "spry" for one of his years. He lived in Fairfield, Iowa, and came to Kansas City to visit his son who, with his wife, met him at the Union Station. They boarded a street car and transferred to a Troost avenue car, but in some way, Allen and his daughter became separated from his son at the transfer point and the latter boarded a car following that on which they became passengers. They seated themselves near the rear vestibule in a seat facing the aisle, and when the car approached Fourteenth street where they were to alight, Mrs. Allen gave the signal to stop and arose from her seat before the car stopped. Allen waited until the car came to a full stop before rising from his seat. Supported on one side by his daughter-in-law and on the other by a cane, he proceeded to leave the car when the motorman started it forward in obedience to a signal from the conductor. Mrs. Allen called to the conductor to stop and immediately he gave the ordinary stop signal, followed by a signal for an emergency stop and the motorman stopped the car at once. The old man who was standing in the aisle near the rear exit was overthrown either by the starting or the stopping of the car, or by both, and fell heavily to the floor, dislocating his right hip and fracturing a bone at the joint. His injury was so severe it caused his death after a year of suffering.

We have quoted the allegation in the petition that the cause of his fall was an "unusually abrupt, violent and unexpected stop" of the car. Counsel for defendants contend that the evidence wholly fails to support this charge but to the contrary shows that the fall was caused by the starting of the car, and, therefore, occurred before the stopping could have operated even as a contributing cause. The deposition of Allen, taken sometime after the injury, was read in evidence, but his testimony relating to the precise cause of his injury is not clear and as a whole leaves the impression that his percipient powers and memory had been greatly impaired by senility and acute suffering. Obviously his version of the occurrence is not sufficiently accurate to be accorded much strength in our consideration of the demurrer to the evidence.

The testimony of Mrs. Allen shows that the events of the starting of the car while she and her father-in-law were proceeding towards the vestibule, her call to the conductor, his signal to stop, the stop and the fall of the old man, occurred in a moment, making it difficult for her to distinguish the force which was the most prominent factor in causing the fall. It does not appear that the starting of the car was accompanied by a jerk, but of the subsequent stop she testified "the car stopped with a jerk and it was quite a jostle at that time . . . it stopped with a jerk, it was jerking. Q. What was the next thing you saw? A. Father was on the floor . . . his head was to the northeast (the car was going south) he was on the right side." On cross-examination, counsel for defendants endeavored to extract from her the concession that the fall occurred before the final stop of the car. She would not say so, and to every such question returned the answer that when the car stopped he (her father-in-law) was on the floor. Finally in answer to questions which required her to say how long before the final stop of the car the old man fell to the floor, she

said: "I couldn't say as to the time, it all happened very quick, the starting and stopping of the car."

The charge in the petition is that of general negligence in the abrupt and violent stopping of the car and that such negligence was the proximate cause of the injury. Of a similar averment the Supreme Court said in McDonald v. Railroad, 219 Mo. l. c. 487, it "does not plead specific negligence as that term is understood in the books . . . the gravamen of the charge is the violent stoppage of the car. . . . Taken by or large, it would seem the charge was general, that plaintiff had pleaded no matter showing her knowledge, and that she had a right to assume that the violent stop was negligent without putting in proof of what caused it."

But having pleaded that the injury of her husband was caused by a violent stop, the burden is on plaintiff to establish by proof the existence of such cause and that it directly resulted in the injury. She is not required to go back of those facts to show what negligent act produced the violent stop, but under the well-settled rule which forbids a recovery upon a different cause from that pleaded, she must recover, if at all, upon proof that the injury was the direct result of a violent stoppage of the car. [Gibler v. Railroad, 148 Mo. App. 475; Beave v. Transit Co., 212 Mo. 331; Detrich v. Railway, 143 Mo. App. 176; Bartley v. Railroad, 148 Mo. 124; Hamilton v. Railroad, 114 Mo. App. 504.]

We think the evidence tends to show that there was a violent stop and that it was the proximate cause of the injury. The term "violent stop" must be given a relative meaning, an interpretation in keeping with the circumstances of the case. What would be an inconsequential stop to a standing passenger in the prime of life might be violent and highly injurious to an infirm person, such as this old man undoubtedly was, despite the fact that he was "spry for one of his years." Supporting himself by leaning on his com-

panion and his cane, we have the picture of one who has
passed the period described in the ancient riddle, where
the creature walked on three legs in the evening. Al-
most any abrupt motion, or stoppage of motion, in the
car would be violent and dangerous to a tottering old
man who had lived ten years on borrowed time. The
facts that the car started forward smoothly and slowly
and then stopped abruptly while he was standing would
lead to a reasonable inference that his fall was caused
by the sudden stop and we think that such inference
should not be treated as destroyed, or even much weak-
ened, by the fact that the fall of his body was in an
opposite direction from that of the forward motion of
the car. It is reasonable to believe that the instinctive
resistance he interposed to the dangerous force, in-
creased by the support of his companion and his cane,
influenced the direction of his fall. '

-     In the cases of Scroggins v. Railway, 138 Mo.
App. 215, and Daniels v. Railway, 177 Mo. App. 280,
where the plaintiff testified that in stepping from a
car to the street without holding to anything, or hav-
ing any other support for his body than his legs, he
was pitched forward in the direction the car was go-
ing, by a quick forward jerk of the car, we held that
such testimony should be disregarded as being in plain
and indisputable conflict with physical fact and law,
but we have carefully refrained from extending that
rule and in a number of cases have held that the ques-
tion of the reasonableness of the plaintiff's testimony
must be solved by the triers of fact, whenever it is
physically possible that the injury may have occurred
in the manner claimed by him. [Lang v. Railway,
115 Mo. App. 489; Pickens v. Railway, 125 Mo. App.
669; Barnett v. Railway, 138 Mo. App. 192; Berry v.
Railway, 156 Mo. App. 560; Holland v. Railway, 157
Mo. App. 476; Haskell v. Railway, 161 Mo. App. 64.]

One may readily understand that the rapid alter-
nations of opposing forces brought into operation by the

starting and quick stopping of the car, modified by the resistance, conscious and instinctive, which the old man, aided by his cane and the support of his companion, was able to offer, might have swayed his body back and forth and finally caused it to fall in the direction it did. The fact that other forces than that produced by the sudden arrest of forward motion contributed to the injury would not militate against the inference that that force was the final, proximate cause, without which the injury would not have occurred. The issue of proximate cause, as presented by all the evidence, was one of fact for the jury to determine.

We think the court did not err in overruling the motion to discharge the jury. The cause of action alleged in both petitions was the negligent and injurious act of defendant in violently stopping the car while a passenger was in a position where such act was likely to, and did, result in injury to him. That cause inured to Allen, was the subject of a suit for damages brought by him against defendants, and would have died with him but for the statutes. At common law, an action for personal injuries did not survive the death of the injured plaintiff and both the cause and the right to enforce it abated on his death occurring before the cause had merged into a judgment. [Elliott v. Kansas City, 210 Mo. 576; Behen v. Transit Co., 186 Mo. 430; Bates v. Sylvester, 205 Mo. 493.]

By the provision of section 5425, Revised Statutes 1909, the cause survives the death of the injured plaintiff in cases where death resulted from such cause and the right to enforce it passes first to the widow. This statute does not apply to cases where death did not result from the alleged negligent injury. In such cases the cause does not abate but is continued in virtue of the provisions of section 5438, Revised Statutes 1909, and the right to enforce it inures to the personal representative of such injured party. If Allen's death resulted from the negligence of defendants, plaintiff, as his

widow, was the proper party to sue for the enforcement of the surviving cause of action, but if his death was not caused by such negligence, the surviving cause could be enforced only in action prosecuted by her as her husband's personal representative. [Showen v. Railway, 164 Mo. App. 41.]

In reviving her husband's action in her own name as executrix, plaintiff proceeded upon the theory that the proof might show that his death did not result from the pleaded negligence, and in bringing suit as his widow, under section 5425, she took the opposite position. The two actions were inconsistent, not in the alleged causes, which were the same, but in the vital matters of the measure of recovery and of the proper party to prosecute the cause as plaintiff. But the pendency of one suit was not a bar to the prosecution of the other, and when the parties stipulated that the two should be tried together before the same jury, there was no reason for the court to refuse to allow them to carry out their stipulation, the clear object of which was to keep both actions in court until the proof was before the jury on the vital issue of whether or not Allen's death resulted from his fall. Without the stipulation the parties would have been compelled to try the actions separately, which meant that if plaintiff failed to recover as executrix, they then might try the cause on her demand as the widow of the injured man. Where a petition is *felo de se* the court acquires no jurisdiction over the subject-matter and none can be conferred by agreement of parties (Behen v. Transit Co., supra; Jordan v. Transit Co., 202 Mo. 418), but this is not that kind of a case. Each petition states a good cause of action and neither cause could have barred the prosecution of the other until it had become merged into a judgment. With complete jurisdiction over both parties and subject-matter in each case, there is no rule that forbade the court, at the request of the parties, trying the cases together and at the

close of the evidence, compelling plaintiff to select the action she would have submitted to the jury.

The demurrer to the evidence was properly overruled.

The objections to the first instruction given at the request of plaintiff are sufficiently answered in the decisions of the Supreme Court in Stauffer v. Railway, 243 Mo. 305, and Sweeney v. Railway, 150 Mo. 385.

Instruction numbered nine (9) asked by defendants was properly refused, on the ground that it withdrew from the consideration of the jury the evidentiary facts which had a direct bearing on the issue of the cause of Allen's death. [Sharp v. Railway, 313 Mo. 517; McDonald v. Railway, supra.] There is no prejudicial error in the record. All concur.