Maude M. Roberts, Respondent, v. Woodmen Accident Company, Appellant.—129 S. W. (2d) 1053.

Kansas City Court of Appeals. March 6, 1939.

*Milton Schwind* for appellant.

*Dean Frazier* for respondent.

SPERRY, C.—Mrs. Roberts, plaintiff below, was beneficiary in an accident insurance policy issued by Woodmen Accident Company, defendant below, on the life of her husband, now deceased. Suit was for the death benefit. Judgment was for plaintiff and defendant appeals. The parties will be referred to herein as plaintiff and defendant.

Insured had suffered for two years prior to his death from an enlarged spleen, which ailment grew progressively worse. The spleen is an organ about two and one-half inches wide by three inches long, inclosed in a covering or capsule. It lies in the upper left quadrant of the abdomen. It had increased to a size sufficient to fill a two gallon bucket on May 19, 1937, and could be felt from an external examination. Fluid had been forming in insured's abdomen for many months prior to his death. It was necessary to drain the fluid every few days, just prior to the injury complained of, and quantities ranging up to six quarts would thus be removed. His condition was such that, inevitably, he would have died from disease in the course of weeks or months, probably within one year from the date that he did die; but he would not have died at the time and in the manner he did die but for an accidental injury hereinafter described.

On the evening of May 19, 1937, insured accidentally fell in his room and struck his left side and abdomen on a table leg, causing a slight indentation on his body, which place was red. The blow

ruptured a blood vessel inside the capsule of the spleen and blood rapidly collected therein so that within a few minutes after the accident there was a lump on the upper end of the spleen the size of a small grapefruit. On May 30, following, the lump broke, permitting the imprisoned blood to escape into the abdominal cavity, which caused death.

Plaintiff immediately claimed the death benefit and furnished defendant with proof of loss in due form, including the statement of attending physician, giving the cause of death as above stated. Defendant paid plaintiff $300 in full settlement of the claim, which sum she now retains, and took her release therefor. Her suit is on the theory that there were no grounds for a *bona fide* dispute as to liability; that defendant was fully advised of its liability by the proofs of death; and that the $300 payment was merely a payment on account. The claim here made is for the balance of the policy after crediting the amount paid.

Defendant urges that its demurrer to the evidence, offered at the close of the whole case, should have been sustained. We have set out our findings of fact, based on the evidence in the light most favorable to plaintiff.

If, in fact, there was no ground for a *bona fide* dispute, then no tender back of the amount paid, under an alleged compromise, is required prior to bringing suit for the remainder claimed under the policy. In such case the payment of less than the whole amount due furnishes no consideration for the compromise contract and plaintiff was entitled to credit the amount so paid and sue for the balance. [Biddlecom v. General Accident Assurance Corporation (Mo. App.), 152 S. W. 103, l. c. 106; Yancey v. Central Mutual Insurance Association (Mo. App.), 77 S. W. (2d) 149, l. c. 154.] The rule is otherwise where a dispute in good faith exists and it is settled by payment of a sum less than the whole of the policy, and where it is thereafter sought to avoid the compromise settlement on the grounds of duress, or of fraud in the treaty. [Sheppard v. Travelers Protective Association of America, Docket No. 19266 (this court), not yet reported; Wood v. Kansas City Home Telephone Company, 123 S. W. 6, l. c. 15; McCoy v. McMahon Construction Company, 216 S. W. 770, l. c. 772.]

In determining whether or not a *bona-fide* dispute in good faith actually existed, the liability provisions of the policy and the factual knowledge that defendant had at the time of the compromise become important. If there was actual legal liability under the facts known to defendant at the time the settlement was consummated, there was no consideration to support the compromise; for defendants' ignorance of the law will furnish no consideration or excuse. It is presumed to know the law with reference to its liability under its policy provisions, as the law existed at the time of settlement, provided that it had knowledge of the facts. [Friedman v. State Mutual Life Assurance Company (Mo. App.), 108 S. W. (2d) 156, l. c. 161.]

The pertinent provisions of the policy, governing defendant's liability, were as follows:

"When such loss or disability is effected through violent, external and accidental means and entirely independent of all other causes.

. . .

"This company shall not be liable for . . . death resulting; wholly or partially, directly or indirectly from . . . disease, . . ."

At the time the alleged compromise was induced defendant had full knowledge, through the proofs of loss, of all of the facts surrounding the death, they being briefly stated therein, by attending physician over his certificate, and by plaintiff, as follows:

"Fell and struck his spleen on the table leg in his own home. This caused a lump to form on the spleen which in my opinion was a hemorrhage within the capsule of the spleen. Later this lump disappeared and he hemorrhaged inside of his abdomen."

Said certificate also stated that insured had been under treatment for Splenomegalic polcythemia, later myeloid leukemia, for two years; that the *immediate* cause of death was "intra abdominal hemorrhage due to striking enlarged spleen on table leg." Other details also appear therein. No additional important fact regarding cause of death was brought out at the trial. Therefore, if defendant was liable for the death benefit under the above facts and under its policy provisions, it had legal knowledge of its liability at the time the release was signed.

There is no question but that the accident caused the injury which, in turn, caused the death. It is not contended that the condition of insured's health caused him to fall; but it is shown by plaintiff's medical evidence that had insured not been suffering from the enlarged spleen the fall would not have caused the injury from which he died. This is true for the reason that but for the greatly swollen and enlarged condition of insured's spleen it would have been so deeply buried within the abdomen and so well protected by other tissues as to have been completely insulated from the effects of the blow received on the abdomen.

We think this case falls within the rule adopted by the Supreme Court in Fetter v. Fidelity & Casualty Company, 73 S. W. 592, l. c. 595, where it was said:

"An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death if he died by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so as well when death comes through the medium of a disease directly induced by the injury as when the injury immediately interrupts the vital processes."

There insured fell against the corner of a table, rupturing a kidney.

There was a cancerous condition of the kidney existing and the rule was made to apply on the theory that the accident was one which would not have ruptured the kidney had it not been for its prediseased condition. In the case of Goodes v. Order, U. C. T., 174 Mo. App., 330, l. c. 339, the St. Louis Court considered a policy exempting defendant's liability for accidental death "happening directly or indirectly in consequence of disease or caused wholly or in part by bodily infirmities or disease," and the court approved an instruction which fixed liability in the event the jury found that apoplexy caused insured to fall, provided that they should find that the fall caused the death and, at l. c. 356, the court discussed two English cases. In the first, liability under similar policy provisions was held where insured fell into a brook while in an epileptic fit, and was drowned, it being said that he died from drowning, an accident, and that the law did not seek the cause of causes; in the other, insured suffered a fit and fell in front of a train, and it was held that he met accidental death by being overrun by the train.

The St. Louis court, in Rieger v. Mutual Life Insurance Company, 110 S. W. (2d) 878, l. c. 881, considered a provision exempting liability if death "result directly or indirectly from bodily or mental infirmity or disease of any sort." It was held that such provisions had reference to the cause of accident, not to its effect.

In the case at bar death resulted solely and directly from the accident of falling and striking his abdomen on the table leg. The facts are unlike those in the case of Christianson v. Metropolitan Life Insurance Company, 102 S. W. (2d) 682, wherein this court held that death could not have occurred from the accident alone but for the concurring effects of the disease of diabetes from which she then suffered and which previously existed. This case is analagous to that of Schepman v. Mutual Benefit Health & Accident Association where we held that the cause of death was the accidental striking of the head.

Since the evidence, when viewed in the light most favorable to plaintiff, discloses the facts to be as we have stated them, the court properly ruled the demurrer.

There was no factual evidence whatever that either contradicted or added to the facts touching illness, accident and circumstances of death, as same have been heretofore stated. The facts essential to a determination of the case were included in the proof of loss which was introduced in evidence by defendant, and the testimony of its agent that he had such proof of loss before him when he "compromised" the claim. There being no disputed fact but only a dispute as to the law, there is no room for application of the principle declared in Sormm v. Laclede Gas Light Co., 46 S. W. 968.

But defendant offered the evidence of a medical witness whose testimony consisted solely in giving his opinion based on a hypothetical question. No objection was made to the general form of the question,

although it hypothesized some important facts not in evidence and failed to hypothesize others equally important that were in evidence. Such witness was permitted to testify, over the timely objection of plaintiff, that, in his opinion, based upon the hypothesized facts included in the question, the disease from which insured then suffered contributed to his death. It was error to admit it. [Rieger v. Mutual Life Insurance Company, *supra*; Fetter v. Fidelity & Casualty Company, *supra*.]

Instruction D, given for defendant, instructs the jury to find for defendant if it finds that the disease contributed to death of insured. The instruction stated the entire theory of defendant, to the effect that if insured's death was contributed to, however remotely, by the disease from which he suffered, and if death would not have occurred at the time it did occur if it had not been for his weakened and diseased condition, notwithstanding the blow he had received which ruptured the spleen, and notwithstanding the bursting of the capsule of the spleen, caused by the swelling hematoma therein, there then existed grounds for a *bona fide* dispute which had been compromised and which compromise, alone, barred recovery; and that, regardless of said compromise, defendant was not liable under its policy for any sum because of the above primary facts. If it had a right to have the first above-mentioned theory submitted, the jury found against it on such submission and the matter is forever settled. The sole evidence in support of such theory was that of the medical witness above mentioned, and the jury may have noticed that the hypothetical question, as asked, did not properly hypothesize all of the material facts, and those only, as were in evidence; and their judgment may have been influenced thereby.

It is complained, however, that the instruction conflicts with the instructions of plaintiff in that plaintiff's instructions ignored disease as a contributing cause of death. We think plaintiff's instructions correctly state the law. [Fetter v. Casualty Company, *supra*; Rieger v. Mutual Life Insurance Company, *supra*.] This is true for the additional reason that the evidence of defendant established the cause of death as independent of any contributing cause from disease, with the exception of the above mentioned medical testimony which was based on an imperfectly stated hypothetical question.

Plaintiff's case was submitted under instructions on the theory of failure of consideration, which, under our view, was proved by the evidence of defendant. But plaintiff also submitted an instruction on fraud and duress without requiring the finding of facts which establish fraud or duress. Under the circumstances the error was harmless and not reversible.

Failure to require, in the main instructions for plaintiff, a finding of facts justifying a verdict notwithstanding the release, is urged as error. The facts proved by defendant established the invalidity of

the release; and even the medical evidence of which we have heretofore spoken does not avail defendant on this point because it was not shown that it had knowledge of any such evidence, or believed such fact, at the time the settlement was made. The statement of Dr. Fuson, one of insured's attending physicians, was introduced by defendant for the purpose of showing the extent of defendant's knowledge of insured's diseased condition at the time of the settlement, and Dr. Fuson stated therein that he could not say as to whether the disease hastened the demise of insured. This statement, together with the contents of the proofs of loss, constituted all of the medical information defendant ever claimed to have, at the time of the compromise, tending to show insured's death was caused or contributed to by disease. There was no error in the instructions on this ground.

The judgment should be affirmed. *Campbell, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. . The judgment is affirmed. All concur.