Wallace GLICK, by his Guardian and Curator, Bessie McGinty, and Bessie McGinty, individually, Appellants,

v.

BALLENTINE PRODUCE INCORPORATED, Charles James Harris, C. J. Harris, Alice J. Reed, Administratrix of the Estate of William Claire Reed, Deceased, Tom Joseph Jones, and Miller Chevrolet Company, Respondents.

No. 51298.

Supreme Court of Missouri,

Division No. 2.

Nov. 8, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 13, 1965.

Elwyn L. Cady, Jr., Kansas City, for appellants.

John R. Caslavka, Kansas City, for respondents, Charles James Harris and C. J. Harris, Shughart, Thomson & Kilroy, Kansas City, of counsel.

E. E. Thompson, Kansas City, for respondent Alice J. Reed, Admx. of Estate of William Claire Reed, Decd., Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

Morris H. Kross, Rogers, Field & Gentry, Kansas City, for respondent, Ballentine Produce Inc.

EAGER, Presiding Judge.

In this rather unusual action Wallace Glick, a minor, sues for the death of his father, Marvin Glick, and Bessie McGinty, his mother, sues for the deaths of two other minor sons, Philip Glick and Robert Glick. We shall disregard entirely one unrelated claim against Allstate Insurance Company stated in Count II of the amended petition; that is not shown to have been disposed of, but the judgment was rendered without a jury and it was expressly made a final judgment for the purpose of appeal. See Rule 82.06, V.A.M.R. In Count I the minor plaintiff and his mother seek recovery, respectively, for the deaths

as at common law, the minor praying a recovery of $162,000 damages for his pecuniary loss, and his mother asking $100,000 for the death of each of her two deceased minor sons. Bessie McGinty, as guardian and curator, was substituted in this count for the next friend who initially sued for Wallace Glick. In Count III Wallace Glick, adopting the facts stated in Count I (to be related), seeks recovery under § 537.080 of our death statute for the death of his father (the widow obviously not having sued within six months) but prays a recovery of $162,000 as compensatory damages and $100,000 as exemplary damages. In Count IV Bessie McGinty, likewise, seeks recovery under that statute for the deaths of each of her deceased minor sons, but prays a recovery of $100,000 plus $100,000 as "exemplary" damages for the death of each son. In each of the last two counts it is alleged that the negligence of the defendants was of an "aggravated nature amounting to wanton disregard for life or limb."

The appeal has been dismissed by stipulation as to two of the original defendants, Joseph Jones and Miller Chevrolet Company. The claims of Bessie McGinty for the death of her sons, common law and statutory, include Ballentine Produce Incorporated, as a defendant; those of Wallace Glick do not. All such claims, however, include defendants Charles James Harris, C. J. Harris, and Alice J. Reed as Administratrix of the estate of William Claire Reed.

The facts alleged in the petition are, as briefly as they may be recited: that Marvin Glick and his three sons were driving south on U. S. 71 By-Pass on October 14, 1962, at a point about 1.3 miles south of the Clay-Jackson County line; that their car was struck by a truck of Ballentine Produce Incorporated, driven by one William Riley Mason, and that sundry specified negligence of that driver (primary and humanitarian) "contributed" to the cause of the collision;

that as a direct result of this collision the father and two of the sons (now deceased) were thrown to the pavement of the highway being "mortally wounded by impact to each and every tissue and cell of their bodies"; that "following in time by a few minutes" the defendant Charles James Harris (as agent for C. J. Harris), defendant Tom Joseph Jones (as agent of Miller Chevrolet Company), and (original) defendant William Claire Reed, all traveling north, collided with the persons of the three Glicks "as they lay on the roadway," and that the negligence of each such driver, primary and humanitarian, stated in sundry specified particulars, "contributed to the cause of said collisions" and that as a direct result of the collisions by such subsequent (following) drivers with the three persons "each and every tissue and cell of the bodies of said persons sustained injury which contributed to their respective deaths * * *." It was also alleged that defendant Reed was a resident of Clay County; he subsequently died and his Administratrix was substituted. Ballentine is an Arkansas corporation; the Harrises were residents of Kansas. Reed was served personally, Ballentine and the Harrises under the "Long-Arm" statutes (§§ 506.200–506.320, RSMo 1959, V.A.M.S.[1]).

All defendants attacked the petition by motions: Ballentine by motions to dismiss for lack of jurisdiction and improper venue, and because the amended petition failed to state a claim on which relief could be granted to either plaintiff with respect to any of the claims; the Harrises by motions to quash and to dismiss because of lack of jurisdiction and improper venue; defendant Reed, Administratrix, by motion to dismiss for failure to state a claim against her in any count upon which relief could be granted. Jones and Miller Chevrolet also filed motions which need not be specifically described. The grounds of the motions attacking jurisdiction and venue were that no valid, joint cause of action was stated

---

1. All statutory references will be to that revision, unless otherwise stated.

against Reed, the only resident defendant, that the claim against him (and his Administratrix) was colorable, and that he was fraudulently joined for the purpose of establishing jurisdiction and venue under § 508.010(3). On October 12, 1964, the court sustained the motions to dismiss of all such defendants and entered an order dismissing the first amended petition as to each such defendant; it was also provided in the order that it should be deemed a final judgment as to such parties for the purpose of appeal. The order did not state the ground or grounds upon which the motions were sustained,—i. e., whether on the merits for failure to state a cause of action against each defendant, or for lack of jurisdiction and improper venue. Normally, we would thus assume that the order was on the merits, but since the Harrises only raised the questions of jurisdiction and venue the contrary seems to be indicated here.

 We first inquire therefore whether, on this record, the court had jurisdiction of the persons of the defendants and if the venue was proper under § 508.010(3). In order to establish the venue the plaintiff must, of course, state a cause of action against the resident defendant, but nevertheless if it appears to be clear from the records, pleadings, and facts adduced that the resident defendant cannot be held liable on any reasonable ground or theory, and that plaintiff must be presumed to have known this, the joinder cannot be justified and the cause should be dismissed. Diehr v. Carey, 238 Mo.App. 889, 191 S.W.2d 296; Lichterman v. Crockett, Mo., 331 S.W.2d 607. On the other hand, if it appears that plaintiff had reason honestly to believe on the facts that he had a joint cause of action against the resident defendant, along with the others, and if he has stated such a cause of action, the case should not be dismissed as based upon a fraudulent joinder. Such motions are presented (or should be) under Rule 55.31; the movant carries the burden of persuasion and, if proof be necessary, the burden of proof. The cases last cited recognize that a plaintiff may not succeed merely by stating a paper case against the resident defendant and that the court may and should, if need be, look into the facts. If this can be accomplished by affidavits, well and good; if not, the court may hear evidence.

 The real gist of the contention concerning jurisdiction and venue boils down to the effect of the allegation of the amended petition, stated or adopted in all three counts, that after the first collision with Ballentine the father and the two sons, thrown to the pavement by that impact, were "mortally wounded." This, defendants argue, means that they were *dead* and that Reed, the resident defendant (and presumably the others), could not have been liable even for contributing to cause any of the deaths; also that plaintiffs are bound by the allegations of their petition. Baysinger v. Hanser, 355 Mo. 1042, 199 S.W.2d 644; M.F.A. Mutual Ins. Co. v. Hill, Mo., 320 S.W.2d 559. Counsel also say that the allegation just mentioned is so inconsistent with the later allegations regarding contribution to the deaths, that it nullifies the later allegations. While, from the standpoint of the plaintiff, the use of the term "mortally wounded" would seem to have been very inept, we do not construe it as the equivalent of "dead." We do construe it to mean that these persons had been injured to such an extent that they would eventually die from the injuries; but, even so, if life still existed there remained a right not to be injured further (with an immediate termination of life) by others. Herke v. St. Louis & S. F. R. Co., 141 Mo.App. 613, 125 S.W. 822. In this we do not infer the actual existence of any negligence on the part of the subsequent drivers; but such negligence is alleged. The law recognizes that where " 'the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages of either or both and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury.' 1 Thompson on Negligence, § 75." Berryman v. People's Motor-

bus Co. of St. Louis, 228 Mo.App. 1032, 54 S.W.2d 747, loc. cit. 749. See also: Willey v. Fyrogas Co., 363 Mo. 406, 251 S.W.2d 635; Layton v. Palmer, Mo., 309 S.W.2d 561, 66 A.L.R.2d 1242; Domitz v. Springfield Bottlers, 359 Mo. 412, 221 S.W.2d 831; Brantley v. Couch, Mo.App., 383 S.W.2d 307. As stated in the last case at loc. cit. 310: " ' * * * According to the great weight of authority, where the concurrent or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, either is responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tortfeasor, and the injured person may at his option or election institute suit for the resulting damages against any one or more of such tort-feasors separately, or against any number or all of them jointly. The injured person is not compelled to elect between the tort-feasors in invoking a remedy to obtain compensation. * * * ' " In Willey, supra, it is pointed out that liability is not defeated by the fact that the negligence of one defendant may precede or follow that of another in point of time. The facts of Berryman, supra, are particularly analogous here. See, also, generally, Thompson v. Louisville & N. R. Co., 91 Ala. 496, 8 So. 406; Micelli v. Hirsch, Ohio, 83 N.E.2d 240. There is also a close analogy between this situation and certain of the accident insurance cases which hold that if an accident is the immediate cause of death there is liability, and that it is immaterial what diseases or physical conditions might have been present, even if they would eventually have caused death acting alone. Roberts v. Woodmen Accident Co., 233 Mo.App. 1058, 129 S.W.2d 1053; Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S.W. 592, 61 L.R.A. 459, 97 Am.St.Rep. 560; Mutual Benefit Health & Accident Ass'n v. Fran-

cis, CA 8, 148 F.2d 590. If that principle is to be applied to insurance companies, we see no reason why it should not also apply generally. We note here that the brief of appellants has not been too helpful to us on this point.

■■ Thus, the amended petition on its face does not fail to state a joint cause of action against Reed's Administratrix. So far as the facts are concerned, counsel for Jones and Miller Chevrolet attached to their motions his affidavit verifying all the allegations upon information and belief. In so far as these related to our present inquiry, they were (ignoring obvious conclusions) that plaintiffs had no "proof, witnesses or evidence proving or tending to prove" that the acts of Reed caused or contributed to cause any of the deaths. Plaintiffs' counsel subsequently filed his affidavit, stating that he had personally undertaken the investigation and that in his opinion there was admissible evidence tending to prove that the negligence of Reed and of Jones and Miller Chevrolet contributed to the deaths; also, that plaintiffs had a photograph, taken by the first law enforcement officer at the fatal scene, "showing the bloody Reed car very shortly after it had been lifted by wrecker from the body of one of the decedents." These affidavits are somewhat sketchy and conclusionary; however, on the present record we hold that defendants have not shown that the joinder was pretensive or fraudulent and that plaintiffs did not in good faith join Reed. On this record the jurisdictional motions should have been overruled.

■ Since the case is thus to be remanded, we proceed to the other points. Plaintiffs have attempted to allege common law actions for the deaths in Count I of the amended petition. The defendants, naturally, assert that there is no such existing right and we agree. Plaintiffs' counsel attacks vigorously the validity of the English nisi prius decision in Baker v. Bolton (1808), 1 Camp. 493, 170 English Reports 1033. In that case the court said in part (the action

being one for the death of plaintiff's wife): "* * * the jury could only take into consideration the bruises which the plaintiff had himself sustained, and the loss of his wife's society, and the distress of mind he had suffered on her account, from the time of the accident till the moment of her dissolution. In a civil Court, the death of a human being could not be complained of as an injury; and in this case the damages, as to the plaintiff's wife, must stop with the period of her existence." Counsel now insists that this was dicta; however, the courts of England admittedly followed the decision, and Lord Campbell's Act was enacted in 1846, with a preamble which recited that there was then no cause of action at law for death by wrongful act. That act has generally been accepted as a parliamentary recognition of the pre-existing rule, and it has also served as the model for all subsequent statutory rights of recovery for death by wrongful act. We do not intend to be led into the fruitless task of attempting to upset all the law on this subject, English and American, since 1808. Counsel cite textwriters, Bar Journal articles and even a speech by a judge to the general effect that the rule of Baker v. Bolton was "barbarous," that no satisfactory reasons were given or authority cited, and that the whole rule is simply wrong. Origin of Rule in Baker v. Bolton, 32 L.Q.Rev. 431, by W. S. Holdsworth; 48 ABA Journal 877, Arthur John Keeffe; Tiffany, Death by Wrongful Act, 2nd Ed., Ch. 1; Burdick, Law of Torts, 4th Ed., 290 et seq., speech of Judge Frantz of Colorado on May 8, 1963. The only Missouri case cited, James v. Christy (1853), 18 Mo. 162, has been discussed and distinguished in Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920, loc. cit. 922.

To the effect that there is no common law right of action in Missouri for wrongful death see the following: Barker v. Hannibal & St. Joseph R. Co., 91 Mo. 86, 14 S.W. 280; Allen v. Dunham, 188 Mo. App. 193, 175 S.W. 135; Clark v. Kansas City, St. Louis & C. R. Co., 219 Mo. 524, 118 S.W. 40; Jordan v. St. Joseph Ry., Light, Heat & Power Co., 335 Mo. 319, 73 S.W.2d 205; Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920; Demattei v. Missouri-Kansas-Texas R. Co., 345 Mo. 1136, 139 S.W.2d 504; Baysinger v. Hanser, 355 Mo. 1042, 199 S.W. 2d 644; Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889; Plaza Express Co. v. Galloway, 365 Mo. 166, 280 S.W.2d 17; Nelms v. Bright, Mo., 299 S.W.2d 483; Frazee v. Partney, Mo., 314 S.W.2d 915. Other cases might also be cited. We decline to overturn this Missouri law of well over a century's duration on the strength of scattered voices of protest and criticism. Even if there *had been* a common law right of action for death in Missouri prior to our first statutory enactment, the statute itself, when enacted, precluded that right and encompassed the whole field. *There is no common law right of action for wrongful death in Missouri.* Count I of the amended petition stated no claim on which relief could be granted to either plaintiff.

The next point is whether Counts III and IV stated causes of action under the death statute. The position of plaintiff's counsel here brings to mind the statement of the court in the companion case of Glick v. Ballentine Produce, CA 8, 343 F.2d 839, 844, that: "* * * they [plaintiffs' counsel] obstinately refused the opportunity to amend their complaint to state a cause of action. Perhaps they are more desirous of attemping to establish a new principle." We do not have an affirmative record here of leave to amend, but neither do we have an indication of any attempt or request to amend in the particulars attacked. Counsel apparently seeks to state claims under § 537.080, which gives the right to sue for a wrongful death, but ignores the limitation upon the amount of recovery fixed by § 537.090. He apparently recognizes the binding effect of § 537.070, which describes and limits the persons who may sue and the limitations in time, both under that (penalty) section and under § 537.080. Counsel's position seems to be that the limitation in

§ 537.090 upon the amount of recovery is unconstitutional. He cites again and quotes a speech of Judge Frantz of the Supreme Court of Colorado to the effect that under the Bill of Rights the courts shall be open to all people, a remedy afforded for every injury, and that the courts must provide a remedy to enforce constitutional mandates where none already exists. In that speech it was also supposedly stated (which, of course, merely becomes here an argument of counsel) that "there is no due process of law in a wrongful death statute which provides inadequate damages * * *." Counsel cite: In re French, 315 Mo. 75, 285 S.W. 513, 47 A.L.R. 688, and Neely v. St. Francis Hospital & School of Nursing, Inc., 192 Kan. 716, 391 P.2d 155. The first case is so wholly different on its facts that it does not merit discussion. In the second, the Kansas Court held that a statute exempting nonprofit hospital coporations from attachment and garnishment, *except* on obligations to the state or its subdivisions or on contract claims, contravened the Bill of Rights, in that it denied a remedy to some creditors and not others. The court had previously renounced its doctrine of charitable immunity and the new legislation was apparently intended as an answer to that ruling. We do not consider that opinion as persuasive here.

 Counsel deals in the utmost generality with this point, relying on the principle of the right to a remedy for every injury (Art. I, § 14, Mo.Const.), due process (§ 10) and the equality of rights under the law (§ 2). We find nothing in plaintiffs' citations or arguments which indicate any constitutional infirmity in a limitation on the amount of recovery in a death action. The legislature *created* the right of action where none existed before, and it may condition the right as it sees fit. It is worthy of note that we have not been cited to a single case, nor have we found any, where this limitation on the recovery has ever been questioned in Missouri as unconstitutional. We note that § 537.070, sometimes called the "penalty"

section, also carries its own limitation. The amounts so provided in the two sections have been increased from time to time since our first enactment in 1855 (R.S.Mo.1855, Vol. 1, pp. 647–649). The legislature has thus indicated a specific intent that the pecuniary limitations included should be an integral part of the act, and it has never evidenced any intent that such limitations were separable and could be held invalid without destroying the entire act. Our Workmen's Compensation Act has been held constitutional against sundry attacks; it has been held not to constitute a special law or an arbitrary classification, not a denial of equal protection, and not violative of due process. Waterman v. Chicago Bridge & Iron Works, 328 Mo. 688, 41 S.W.2d 575; DeMay v. Liberty Foundry Co., 327 Mo. 495, 37 S.W.2d 640; Holder v. Elms Hotel Co., 338 Mo. 857, 92 S.W.2d 620, 104 A.L.R. 339; and this, despite the fact that it constitutes a complete substitution for the common law remedies (with specific exceptions). Sheets v. Hill Bros. Distributors, Inc., Mo., 379 S.W.2d 514. Counsel sought to distinguish that situation by the argument that there the legislature *gave something* to claimants. True, it gave to some a limited recovery for injury by accident occurring without negligence; but, at the same time, it limited the recovery of all those employees injured by negligence who *would* otherwise have had a common law right of action against their employers for the wrong. We see no difference in principle, and the limitations of our act do not infringe any constitutional rights. These plaintiffs had a valid, enforceable remedy under the act, like all other similar claimants; they may certainly not seek to use parts of the act and ignore a vital, integral and inseparable limitation. We have noted, more specifically, that in Richards v. United States, CA 10, 285 F.2d 521, at p. 525, the court said: "A right of action for wrongful death exists by statute in Missouri. Nelms v. Bright, Mo., 299 S.W.2d 483. * * * And at the time of such airplane crash, it was further provided by statute in Missouri that damages not to exceed $15,000

might be awarded for wrongful death. R.S. Mo.1939, § 3654. No limitation in respect to amount of damages is provided by statute in Oklahoma. But in creating the statutory right of action for wrongful death, it was competent for Missouri to fix the maximum amount of damages recoverable in an action under such statute." This was affirmed at 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492.

■ Finding thus that the pecuniary limitations are constitutional, we must still determine whether plaintiffs have stated causes of action in Counts III and IV. The defendants insist that by refusing to abide by the damage limitations of the act and by claiming exemplary damages as separate items, they have failed to bring themselves within the act and do not state a cause of action in either count. Various Missouri authorities hold that in order to recover under the act one must bring himself strictly within its provisions. Nelms v. Bright, Mo., 299 S.W.2d 483; Barker v. Hannibal & St. Joseph R. Co., 91 Mo. 86, 14 S.W. 280; Clark v. Kansas City, St. Louis & C. R. Co., 219 Mo. 524, 118 S.W. 40; Demattei v. Missouri-Kansas-Texas R. Co., 345 Mo. 1136, 139 S.W.2d 504; Martin v. Southwestern Bell Telephone Co., 344 Mo. 83, 125 S.W.2d 19; Fair v. Agur, 345 Mo. 394, 133 S.W.2d 402. Generally speaking, these cases deal with questions concerning the presence or absence of a necessary party or parties and the necessary allegations concerning the existence or nonexistence of certain relatives, as well as the time of filing suit. Such things are vital, not only to a recovery but often to the very stating of a cause of action. We have found only one case where a plaintiff has been so bold as to sue under the statute for excessive amounts. Perkins v. Wilcox, 294 Mo. 700, 242 S.W. 974. There a widow pleaded, and the trial court submitted, a claim for $10,000 actual damages and $15,000 punitive damages, for the death of her husband. The judgment recovered was for $10,000 actual and $10,000 punitive damages. This court

reversed on the merits, holding that there was insufficient evidence of causation, but we note that the court did rule the case as one constituting an action under the statute. It said in part, loc. cit. 976: "This case seems to have been tried by the court and counsel for respondent in utter disregard of either the statute or common law. There could be no recovery in a death case under the latter, for the obvious reason that a personal right of action dies with the person. Considered as a suit under the statute, the maximum amount of recovery in a death case is $10,000, and yet the plaintiff sued for $25,000, and the court actually permitted a judgment to be entered for $10,000 as compensatory damages, and a like amount for exemplary damages. The death of plaintiff's husband occurred on April 8, 1919, and we will dispose of the case as a statutory action, under sections 5426, 5427, R.S.1909 (now sections 4218 and 4219, R. S.)." We hold that the mere presence of a statement of and a prayer for excessive damages does not prevent the petition from stating a claim for relief under the statute, if it is otherwise sufficient. No points are briefed here of insufficiency in parties or time of filing suit. Counsel for plaintiffs would certainly be well advised to amend his petition in the respects indicated, if he is subsequently given the opportunity. Of course, the trial court may always control the extent of recovery at the submission of the case. We are not favorably impressed with the persistency of counsel in thus flouting our statutes and our adjudicated cases.

■ There is no recovery in a death case for punitive damages, as such. Such a petition may plead, and appropriate instructions may submit, the question of "mitigating or aggravating circumstances," if the evidence justifies it. Williams v. Excavating & Foundation Co., 230 Mo.App. 973, 93 S.W.2d 123, 127; Hertz v. McDowell, 358 Mo. 383, 214 S.W.2d 546. While added damages because of "aggravating circumstances" may, in a sense, be considered as

punitive in nature, they are not to be submitted as such nor are they to be submitted separately, nor is any total verdict and judgment to exceed the statutory limit. Within that total limit the jury may exercise a broad discretion. Hertz, supra; Huffman v. Mercer, Mo., 295 S.W.2d 27. Defendants insist that plaintiffs may not amend so as to state a claim after the passage of the one year period of limitation. Forehand v. Hall, Mo., 355 S.W.2d 940. We have held that the amended petition does state a claim, though very ineptly. And in so holding we may state that we have kept primarily in mind the interests of the plaintiffs themselves, feeling that they should not be penalized by the failure or refusal of their counsel to follow the long established guidelines of the law.

The judgment of dismissal as to defendants Ballentine Produce Incorporated, Charles James Harris, C. J. Harris, and Alice J. Reed, Administratrix of the Estate of William C. Reed, deceased, is reversed. That judgment had no reference to Count II against Allstate Insurance Company, and the present appeal was dismissed as to defendants Jones and Miller Chevrolet Company. The reversal of the judgment leaves pending the motions of defendants Ballentine, Harris and Reed. On the record as it now stands those motions should all be overruled as to Counts III and IV, and the trial court is directed to so order, unless in its discretion it determines to hold a factual hearing before or at trial on the questions raised concerning the alleged fraudulent joinder of the defendant Reed; in that event, an appropriate order may follow the hearing. We have discussed that question sufficiently to state our views rather clearly. Assuming a determination of the foregoing questions, and if the court retains jurisdiction, all motions to dismiss should be sustained as to Count I which properly raise the point that such count does not state a claim on which relief can be granted. If proper application is made for leave to amend Counts III and IV, as it is indicated

herein that they should be, such leave should be granted, within reasonable limits.

The judgment is reversed and the cause remanded for further action in accordance with this opinion.

All of the Judges concur.